No. 24-2544

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

**NINA JANKOWICZ**
**Plaintiff-Appellant**

**v.**

**FOX NEWS NETWORK, LLC, and**
**FOX CORPORATION**
**Defendants-Appellees**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

## REPLY BRIEF FOR APPELLANT NINA JANKOWICZ

Max Rodriguez
LAW OFFICE OF MAX RODRIGUEZ PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
(646) 741-5167

Rylee Sommers-Flanagan
Molly E. Danahy
UPPER SEVEN LAW
P.O. Box 31
Helena, MT 59624
(406) 306-0330

*Attorneys for Plaintiff-Appellant*
*Nina Jankowicz*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 4

I.   The District Court erred by misapplying the standard of review ...................... 4

II.  Jankowicz states a claim for defamation. ......................................................... 6

A.  Jankowicz plausibly alleged Fox's statements have defamatory meaning and are actionable ......................................................................................................... 6

1.  Fox's statements have multiple potential meanings, some of them actionable, precluding granting the motion to dismiss ....................................... 6

2.  Neither qualifying language nor the label of a show or commentator render statements *per se* non-actionable ........................................................... 10

3.  Statements about the Board accompanied by references to Jankowicz are statements concerning Jankowicz .................................................................... 11

4.  The District Court erred by concluding all Fox's statements were about Jankowicz's motivations and intentions, but in any case such statements are capable of being actionable ................................................................................ 12

B.  Fox's statements were false ..................................................................... 15

1.  Fox selectively misreads the Board's charter ......................................... 15

2.  Fox was not free to ignore all inconvenient clarifications and denials as it claims ............................................................................................................... 17

3.  Fox's claims that Jankowicz was fired were meaningfully false .............. 19

4.  Fox's claims that Jankowicz was associated with Birdwatch were meaningfully false ........................................................................................... 20

C.  Jankowicz plausibly alleges Fox's statements were made with actual malice ........................................................................................... 21

D.   Jankowicz plausibly alleges Fox's statements were defamation *per se*........22

E.   Jankowicz plausibly alleges a claim against Fox Corporation .....................24

III.    Fox's waiver arguments fail...........................................................................24

IV.    Most of the defamatory statements in the Complaint are not time-barred, and the Court can also consider time-barred statements for their relevance to the plausibility of Jankowicz's claims .........................................................................26

CONCLUSION ........................................................................................................27

CERTIFICATE OF COMPLIANCE ....................................................................28

CERTIFICATE OF SERVICE...............................................................................29

CERTIFICATION OF BAR MEMBERSHIP .......................................................30

CERTIFICATION OF IDENTITY STATEMENT ................................................31

CERTIFICATION OF VIRUS SCAN ...................................................................32

# TABLE OF AUTHORITIES

## CASES

*600 W. 115th St. Corp. v. Von Gutfeld*,
  603 N.E.2d 930 (N.Y. 1992) ............................................................6

*Addison v. City of Baker City*,
  258 F. Supp. 3d 1207 (D. Or. 2017) ...............................................26

*Baker v. Galusha*,
  981 N.Y.S.2d 198 (N.Y. App. Div. 2014) ......................................14

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) .............................................8

*Block v. Tanenhaus*,
  867 F.3d 585 (5th Cir. 2017) ...........................................................9

*Brian v. Richardson*,
  660 N.E.2d 1126 (N.Y. 1995) ........................................................14

*Church of Scientology Int'l v. Behar*,
  238 F.3d 168 (2d Cir. 2001) ...........................................................19

*Confer v. Custom Eng'g Co.*,
  952 F.2d 41 (3d Cir. 1991) .............................................................25

*Davis v. Ross*,
  754 F.2d 80 (2d Cir. 1985) ....................................................5, 7, 20

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) .....................................................20, 23

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ..............................................................4

*Doe v. Univ. of Scis.*,
  961 F.3d 203 (3d Cir. 2020) .........................................................4, 5

iii

*Dreibelbis v. Scholton*,
274 Fed. Appx. 183 (3d Cir. 2008)...............................................25

*Dworkin v. L.F.P., Inc.*,
839 P.2d 903 (Wyo. 1992)..............................................................8

*Elias v. Rolling Stone LLC*,
872 F.3d 97 (2d Cir. 2017) ............................................................12

*Flora v. Cnty. of Luzerne*,
776 F.3d 169 (3d Cir. 2015) ...........................................................4

*Harte-Hanks Commc'ns., Inc. v. Connaughton*,
491 U.S. 657 (1989) ...............................................................18, 22

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993) ..........................................................10

*Immuno AG v. Moor-Jankowski*,
567 N.E.2d 1270 (N.Y. 1991) ..................................................13, 14

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
822 F.3d 125 (3d Cir. 2016) .........................................................25

*Karedes v. Ackerly Grp., Inc.*,
423 F.3d 107 (2d Cir. 2005) ......................................................7, 18

*Khalil v. Fox Corp.*,
630 F. Supp. 3d 568 (S.D.N.Y. 2022) ............................................22

*Liberman v. Gelstein*,
80 N.Y.2d 429 (1992)...................................................................23

*Martin v. Finley*,
349 F. Supp. 3d 391 (M.D. Pa. 2018)............................................20

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) .................................................................9, 21

iv

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) ............................................................11

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996) ......................................................................22

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ..........................................................................................10

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ......................................................................................12

*NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*,
    No. 20-cv-2875, 2022 WL 900604 (E.D.N.Y. Mar. 28, 2022) ................13, 14

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ...........................................................7, 9, 12, 22

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ...........................................................................9

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014) ............................................................24

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
    42 N.Y.2d 369 (N.Y. 1977) ..........................................................................14

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966) ........................................................................................12

*Schatzberg v. State Farm Mut. Auto. Ins. Co.*,
    877 F. Supp. 2d 232 (E.D. Pa. 2012) ..............................................................7

*Svanaco, Inc. v. Brand*,
    417 F. Supp. 3d 1042 (N.D. Ill. 2019) ..........................................................10

*Tri-M Grp., LLC v. Sharp*,
    638 F.3d 406 (3d Cir. 2011) ..........................................................................24

*U.S. v. Olano*,
507 U.S. 725 (1993) ........................................................................24

*US Dominion, Inc. v. Fox Corp., No. N21C–11–082 EMD CCLD*,
2022 WL 2229781 (Del. Sup. Ct. June 21, 2022) ...........................24

*US Dominion, Inc. v. Fox News Network, LLC*,
293 A.3d 1002 (Del. Sup. Ct. 2023) ...............................................18

*US Dominion, Inc. v. Fox News Network, LLC*,
2021 WL 5984265 (Del. Sup. Ct. Dec. 16, 2021) ...........................11

*Vurimindi v. Fuqua Sch. of Bus.*,
No. 10-cv-234, 2010 WL 3620200 (E.D. Pa. Sept. 13, 2010).........10

*Zerman v. Sullivan & Cromwell*,
677 F. Supp. 1316 (S.D.N.Y. 1988) ................................................19

## <u>OTHER AUTHORITIES</u>

George Orwell, Nineteen Eighty-Four (1949) ........................................12

**INTRODUCTION**

Defendants-Appellees Fox News Network, LLC and Fox Corporation (collectively "Fox") were responsible for publishing and airing coverage of Plaintiff-Appellant Nina Jankowicz more than 300 times over eight months in 2022. App'x 31, ¶ 1. During this time, Fox personalities repeatedly made or implied false statements of fact about Jankowicz, and did so with a reckless disregard for the truth. The court below erred in finding otherwise, especially at this stage.

Fox contends in its brief ("Fox Br.") that the District Court properly granted its motion to dismiss. To affirm, this Court would have to find that Jankowicz's First Amended Complaint (the "Complaint"), accepted as true with all inferences drawn in her favor, presented <u>no</u> plausible basis to conclude that Fox's barrage of coverage involved or implied false statements of fact about Jankowicz, said with actual malice. This Court can judge for itself how credible Fox's arguments are based on a select few examples.

Fox published claims that the Disinformation Governance Board (the "Board"), and Jankowicz as its Executive Director, would "monitor" Americans' speech. App'x 66, ¶ 81. Weeks before, the New York Times had already published a story where a former Department of Homeland Security ("DHS") official said "[i]t's not a big room with feeds from Facebook and Twitter popping up…. It looks at

policy issues, it looks at best practices, it looks at academic research relating to how disinformation influences the threat environment." App'x 58, ¶ 60.

Fox published claims that Jankowicz as Executive Director of the Board could "adjudicate what 330 million people could say based on her view of disinformation." App'x 67, ¶ 82. Weeks before, the White House Press Secretary had told Fox's own correspondent that the Board's "mandate is not to adjudicate what is true or false online." App'x 57, ¶ 59. DHS Secretary Alejandro Mayorkas, also weeks before, testified under oath before Congress that the Board "does not have any operational authority or capability" and would just develop "standards and policies" for DHS. App'x 59, ¶ 61.

Months later, having said all of this and more, Fox published claims that one of its hosts knew what the Board and Jankowicz "in fact ha[d] done[] to censor the speech of Americans…." App'x 76, ¶ 102. Not only were Jankowicz and the Board incapable of censoring anyone, the Board never started work of any kind before it was paused and ultimately dissolved. App'x 65, ¶¶ 74, 76.

Fox also published claims that "the Biden administration had to fire Jankowicz." App'x 88, ¶ 124. She had resigned, App'x 65, ¶ 77, and a DHS spokesperson had made public remarks explaining that her resignation came in the wake of "unjustified and vile personal attacks and physical threats." App'x 65–66, ¶

78. She had also been offered another position at DHS after the Board was paused, which she declined. App'x 65, ¶ 75.

These are the sort of statements Fox now tells this Court, with a straight face, are so supposedly unverifiable, so supposedly opinionated, and so supposedly true that Jankowicz's allegations are not merely wrong, but implausible. This is not just wrong as a matter of law. It is untenable.

Fox is asking this Court to grant it what is, in essence, blanket immunity from defamation liability when discussing public servants with whom it or its audience disagrees. It will not matter how absurd or false the claim is, because in Fox's view any such statements are "engaging in a debate on vital matters of public policy." (Fox Br. 15). Individuals like Jankowicz, who was advised to flee her own home while eight months pregnant because of threats from Fox's audience, hired security consultants with her own money, and whose career has been forever damaged because of the false coverage Fox heaped on her, would have no legal recourse.

As explained in Jankowicz's opening brief ("Opening Br."), the District Court erred by granting Fox's motion to dismiss, misapplying the standard of review in doing so. This Court must vacate the District Court's decision and remand for further proceedings.

# ARGUMENT

## I. The District Court erred by misapplying the standard of review

This is not an appeal from a trial, a motion for summary judgment, or an anti-SLAPP motion under a heightened pleading standard. This appeal is from the grant of a motion to dismiss under the typical standard of Rule 12(b)(6) as governed by *Twombly*, *Iqbal*, and their progeny. This Court has made abundantly clear that "even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely[,] . . . [t]he proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (cleaned up); *see also Doe v. Univ. of Scis.*, 961 F.3d 203, 210 n.3 (3d Cir. 2020).

By deviating from that circumscribed role, the court below committed legal error. *See Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175–76 (3d Cir. 2015). Fox asks this Court to make the same mistake.

Fox's attempts to defend the District Court's reasoning further illustrate that the District Court stepped outside of its well-defined role in considering the motion to dismiss. For example, in attempting to rationalize the District Court's decision to define the concept of "censorship" as a matter of law (drawing inferences against Jankowicz to do so), Fox claims the District Court "rightly rejected [Plaintiff's]

premise" about why both general and specific claims Fox made about censorship were actionable and false. (Fox Br. at 2).[1]

But rejecting Plaintiff's plausible and reasonable "premise" was the legal error. This Court has vacated dismissals for precisely this error. *See, e.g.*, *Doe*, 961 F.3d at 210 n.3 (rejecting district court's rationale that it was "skeptical of Doe's claim because it appears to flow from a faulty premise" because "Doe's argument does not 'flow from a faulty premise,' but from his allegations and the reasonable inferences that can be drawn from them. By indulging its skepticism, the District Court misapplied the familiar standard that governs motions to dismiss under Rule 12(b)(6)").

Fox seems to find the standard promulgated by *Iqbal* and *Twombly* inconvenient. No doubt that is why they sought to apply the heightened anti-SLAPP pleading standard below (which the District Court rejected as waived and which, in any case, is inapplicable in federal court). But there is no heightened pleading standard for defamation claims on a motion to dismiss in federal court. Jankowicz has met her burden.

_____

[1] Fox also claims the District Court's conclusion there was no difference between being fired and being offered the opportunity to stay at DHS as a policy adviser was a "common-sense observation." (Fox Br. 44). Two things in employment could not be much more different, and far finer distinctions have been found to be actionable. *See Davis v. Ross*, 754 F.2d 80, 84 (2d Cir. 1985). To conclude otherwise as a matter of law on a motion to dismiss is a glaring example of the District Court's error.

## II. **Jankowicz states a claim for defamation.**

### A. **Jankowicz plausibly alleged Fox's statements have defamatory meaning and are actionable**

When assessing whether a statement is actionable for defamation, "the dispositive question is whether a reasonable listener . . . <u>could have concluded</u> that [the speaker] was conveying facts about the plaintiff." *600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 934 (N.Y. 1992) (emphasis added).

Jankowicz has demonstrated that the statements at issue in this case have plausible defamatory meanings. (*See, e.g.*, Opening Br. 30–43). Fox's arguments to the contrary are unavailing. Among other things, they purport to invoke sweeping categorical rules that do not exist and misconstrue the courts' role in assessing whether defamation claims are actionable on a motion to dismiss.

### 1. **Fox's statements have multiple potential meanings, some of them actionable, precluding granting the motion to dismiss**

Fox repeatedly attempts to engage in a duel of interpretations: about the word "censor" or "censorship," about the meaning of phrases in the Board's charter, and more. (Fox Br. 22–28, 38–41). Although Jankowicz disagrees with each of Fox's interpretations (and addresses them in greater detail below), *see infra* § II(A)(1), (B)(1)–(3), they are only relevant insomuch as they further demonstrate the District Court's failure to apply the correct legal standard. Plaintiff laid out plausible and sufficient specific and broader contextual bases upon which Fox's statements could

have defamatory meaning. In arguing that the District Court was entitled to accept Fox's alternative interpretations of these statements, Fox merely highlights the District Court's error.

"Only the factfinder can weigh multiple meanings to determine what was meant and what was true or false." (Opening Br. at 51). Applying New York law in defamation actions, it is only when "the court determines that the words are susceptible of <u>only one meaning</u>" that the court must then "determine, as a matter of law, whether that one meaning is defamatory" on a motion to dismiss. *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985) (emphasis added); *see also, e.g.*, *Palin v. N.Y. Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019). If, on the other hand, "the words are susceptible of more than one meaning, it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood." *Davis*, 754 F.2d at 83; *see also Karedes v. Ackerly Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) (same). "[I]t is not the district court's province to dismiss a plausible complaint because it is not as plausible as the defendant's theory." *Palin*, 940 F.3d at 815. Indeed, a complaint alleging defamation should not be dismissed even when the statements at issue are only "barely" capable of defamatory meaning. *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 240–45 (E.D. Pa. 2012).

Fox's statements concerning Jankowicz's role as Executive Director and what the Board (through her) would do plausibly have defamatory meaning because they make or imply factual claims about Jankowicz and the Board's authority, intentions, and the fabricated threat they posed. (Opening Br. 10–16, 31–40).[2] Fox's statements claiming Jankowicz was "fired," "booted," and so on, plausibly have defamatory meaning because they conveyed that Jankowicz was fired or otherwise forced out of DHS when she was not. (Opening Br. 17, 40–41).[3] And Fox's statements claiming Jankowicz was involved in Twitter's Birdwatch tool plausibly have defamatory meaning because they communicated her direct involvement in conceptualizing,

---

[2] Fox relies on *Dworkin v. L.F.P., Inc.*, 839 P.2d 903 (Wyo. 1992), to claim that accusations of censorship cannot be defamatory. In *Dworkin*, Hustler called the plaintiff a censor a single time in a hyperbole-laden opinion piece. *Id.* at 915. Fox discussed Jankowicz more than 300 times in eight months, repeatedly claimed she could and would censor, surveil, or threaten Americans, and cited evidence (i.e., the charter) that its statements were true.

[3] Fox cites to *Biro v. Conde Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) for the proposition that statements claiming Jankowicz was fired were "rhetorical hyperbole" and thus not actionable. But the *Biro* court denied in part the motion to dismiss because the description of an individual as a "classic con man" though vague and hyperbolic, "was reasonably capable of defamatory meaning when "additional facts" were taken into account. *Id.* at 462. Similarly, Fox's statements about the end of Jankowicz's employment at DHS, which implied she could not be kept in the agency, are reasonably capable of defamatory meaning where in fact she was asked to stay after the Board was paused.

developing, or using a tool with which she had no affiliation and that she explicitly said she had no intention to use. (Opening Br. 17–18, 41–43).[4]

The articulation of these plausible meanings of Fox's statements is the end of the inquiry on a motion to dismiss. Whether Fox, the District Court, or anyone else has a competing view of what meaning is best is irrelevant. *See, e.g.*, *Palin*, 940 F.3d at 815; *Block v. Tanenhaus*, 867 F.3d 585, 590 (5th Cir. 2017) (noting the existence of a factual dispute because alleged defamatory statement "<u>can</u> distort the meaning of a direct quotation" (emphasis added)).[5]

Bizarrely, Fox claims that Jankowicz is the one seeking through this appeal to have "the courts declare that 'censor' has only one meaning…." (Fox Br. 24). Fox has it backwards. Jankowicz's position in this appeal is that the District Court erred

---

[4] Fox claims the failure to include full context about Jankowicz's remarks cannot make these statements actionable. The Supreme Court says otherwise. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 511, 515 (1991) (noting that "an exact quotation out of context can distort meaning, although the speaker did use each reported word" because misrepresentation of the speaker's words can cause reputational injury by indicating "a negative personal trait or an attitude the speaker does not hold").

[5] Fox's fallback position appears to be that if it is a "close question," (Fox Br. 21), this Court should favor determining that statements are non-actionable. But a "close question" necessarily renders a claim plausible and thus sufficient to withstand a motion to dismiss. Even if this principle applied under New York law, it is irrelevant in this appeal and the authority Fox relies on is procedurally and factually distinguishable. *See Partington v. Bugliosi*, 56 F.3d 1147, 1159 (9th Cir. 1995) (granting summary judgment where allegedly defamatory statement involved subjective evaluation of a lawyer's performance in a trial).

by granting the motion to dismiss because <u>one</u> of the meanings or understandings of the statements referenced in the Complaint is that they are defamatory and actionable because, among other things, Jankowicz had no authority to do what Fox claimed. It is Fox and was the District Court that undertook the effort in error to unilaterally define those words and concepts as a matter of law at this stage.

### 2. Neither qualifying language nor the label of a show or commentator render statements *per se* non-actionable

Fox also claims its statements are *per se* non-actionable because of the use of "qualifying language" or, in a similar vein, that coverage of Jankowicz was published in part on shows "dedicated to opinionated commentary or a mix of commentary and news." (Fox Br. 25, 31). Fox is wrong.

As to so-called qualifying language, precedent specifically rejects this 'magic words' defense. "A statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion….'" *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993); *see also, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) ("Simply couching such statements in terms of opinion does not dispel [false implications of fact.]"); *Svanaco, Inc. v. Brand*, 417 F. Supp. 3d 1042, 1061 (N.D. Ill. 2019).

Rather, this Court must look at statements in context, including evaluating the entire statement, related statements, and the broader context around the statements, to determine whether they are actionable. *Vurimindi v. Fuqua Sch. of Bus.*, No. 10-

cv-234, 2010 WL 3620200, at *2 n.7 (E.D. Pa. Sept. 13, 2010) (noting qualifying language is "not a talisman with the power to shield defendants for [sic] liability from defamation…. The relevant question is not formal but functional: whether a given statement has a provably false factual connotation" (cleaned up)).

Similarly, Fox's claim that its so-called "opinion" shows are immune from defamation by virtue of that label is wrong. Indeed, Fox has made this categorical claim before in a defamation action under New York law and it was rejected. *See US Dominion, Inc. v. Fox News Network, LLC*, No. N21C-03-257 EMD, 2021 WL 5984265, *28 (Del. Sup. Ct. Dec. 16, 2021) (rejecting Fox's attempt to dismiss defamation claim over statements it characterized as "commentary that used loose and hyperbolic rhetoric for entertainment value") (cleaned up).[6]

### 3. Statements about the Board accompanied by references to Jankowicz are statements concerning Jankowicz

The District Court also erred by holding that statements about the Board were not actionable by Jankowicz. (Opening Br. 43–44). On a motion to dismiss, a "plaintiff 'need only plead sufficient facts to make it plausible—not probable or even reasonably likely—that a reader familiar with [plaintiff] would identify [her] as the

---

[6] Fox stretches the reasoning in *McDougal* well beyond its limits on this point. In that case, the holding was limited by case-specific context that made it "abundantly clear that Mr. Carlson was not accusing Ms. McDougal of actually committing a crime." *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 183 (S.D.N.Y. 2020). Here, by contrast, Jankowicz was accused of violating Americans' Constitutional rights, surveilling them, and more.

subject of the statements at issue.'" *Palin*, 940 F.3d at 816 (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017)).

Sidestepping that unambiguous holding, Fox argues that using Jankowicz's picture or referencing her in the same or related segments does not suffice to make it even plausible that statements made during those segments about the Board would be understood to be concerning her. (Fox Br. 20). Fox makes this nonsensical claim without any apposite authority,[7] instead asking this Court "to reject the evidence of [its] eyes and ears." George Orwell, *Nineteen Eighty-Four* (1949). The repeated overlapping discussion of Jankowicz or use of Jankowicz's photo when making statements about the Board speaks for itself — Fox cannot credibly claim that it is implausible to link these statements to Jankowicz.

> **4. The District Court erred by concluding all Fox's statements were about Jankowicz's motivations and intentions, but in any case such statements are capable of being actionable**

---

[7] Fox's invocation of *Rosenblatt v. Baer*, 383 U.S. 75 (1966), and *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964), does nothing to advance their argument. In both cases, the Supreme Court noted the complete absence of any "evidence showing that the attack was read as specifically directed at the plaintiff." *Rosenblatt*, 383 U.S. at 81; *see also Sullivan*, 376 U.S. at 292. Indeed, in *dicta* immediately following the sentence Fox quotes, the Court noted in *Rosenblatt* that either an "explicit" or "merely implicit" reference to the individual plaintiff through discussion of government action would allow the plaintiff to show "extrinsic proofs that the statement referred to him...." *Rosenblatt*, 383 U.S. at 81.

Fox also adopts and repeats the District Court's error of exclusively interpreting every statement at issue in this case as relating to Jankowicz's motivations or intentions. Numerous statements alleged in the Complaint to be defamatory and discussed in the Opening Brief were "about her existing authorities and what she would do with those existing authorities in the future." (Opening Br. 35). Fox fails to grapple with that distinction.

Furthermore, even when considering statements that do refer to intentions or future actions, the categorical protection Fox claims does not exist. Fox argues that "[w]hen assertions about the motives, intentions, or future actions of public officials" are published, "it is essential that they be recognized as protected opinions." (Fox Br. 29) (emphasis added). Precedent says otherwise.

The New York Court of Appeals held that a forward-looking and speculative statement — a statement that "implie[d] that plaintiff will release possible carrier-chimpanzees who may endanger the wild population" — was "verifiable" and had "an apparent basis in fact." *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1276 (N.Y. 1991) (emphasis added) (*Immuno AG II*).[8] Accordingly, there is no categorical bar to defamation claims concerning forward-looking statements. *See id.*; *see also NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*, No. 20-cv-2875, 2022 WL 900604, at *4–5 (E.D.N.Y. Mar. 28, 2022) (denying a motion to dismiss a defamation claim

---

[8] The New York Court of Appeals affirmed dismissal on other grounds.

arising from an activist investor's report claiming that the plaintiff "systematically misled investors … about a deposit so remote and technically challenging that the mine will never be built"). In *NOVAGOLD*, notably, the defendant specifically argued that the relevant statement was non-actionable because it constituted a "prediction of the future success of the [] Project." 2022 WL 900604, at *4–5. The court rejected that argument. *Id.*

Fox nonetheless asserts that claims by public officials regarding statements related to motives, intentions, or future actions are categorically non-actionable. Once again, the case law says otherwise. *See Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 381 (N.Y. 1977) (statements that plaintiff was "probably corrupt" and his sentences "were suspiciously lenient," were actionable because they carried "strong undertones of conspiracy and illegality," and thus rested on "different footing" than opinions); *Baker v. Galusha*, 981 N.Y.S.2d 198, 200 (N.Y. App. Div. 2014) (finding actionable an advertisement purporting to "expose the low character" of Town Supervisor and accusing him of "unscrupulous dealings" including "possible unlawful abuse of that office").

The inquiry, as in every other defamation case, is in the "over-all context … whether the reasonable reader would have believed the challenged statements were conveying facts[.]" *Brian v. Richardson*, 660 N.E.2d 1126, 1130 (N.Y. 1995) (quoting *Immuno AG II*, 567 N.E.2d at 1281). Given Jankowicz's plausible

allegations that facts were directly or impliedly communicated by Fox's statements, and given the requirement that at this stage her allegations must be accepted as true and all ambiguities and inferences must be resolved in her favor, that burden has been satisfied.

*    *    *

Jankowicz plausibly alleged defamatory meanings communicated by Fox's statements. Rather than crediting her allegations and drawing all inferences in her favor, the District Court erred by crediting Fox's alternative interpretations.

### B. Fox's statements were false

The Opening Brief describes at length Jankowicz's plausible allegations that Fox's statements at issue in this case were false. (Opening Br. 4–21, 44–51). In response, Fox asserts that the District Court correctly resolved disputed questions about falsity against Jankowicz and drew inferences about the veracity of Fox's statements in favor of Fox. Both the District Court and Fox are wrong.

### 1. Fox selectively misreads the Board's charter

Fox, like the District Court, insists that because the charter says the Board would "ensure DHS efforts are coordinated, deconflicted, and harmonized," and that DHS efforts by other operational components of the agency included (1) identifying MDM; (2) assessing and analyzing the risk MDM poses to homeland security; (3) responding to these MDM threats; and (4) building resilience to them, App'x 134,

that means the Board was directly involved in what it describes as censorship. (Fox Br. 38–42). This interpretation misreads the "Purpose" section of the Board's charter and ignores the rest of the charter altogether.

Starting with the "Purpose" section, the charter distinguishes between the different and disparate "Department Components," which will "lead on operational responses to MDM," and the Board, which will serve as a clearing house for communicating and aligning the work of the DHS components across their different mission spaces. App'x 134. It strains credulity to claim the charter draws no distinction between "Department Components" and the Board when it does exactly that in the first paragraph.

The third paragraph of the "Purpose" section makes clear that the Board will not be "identifying MDM" or "responding to [] MDM threats," but instead "will develop and support the implementation of governance policies and protocols that, among other issues, protect privacy, civil rights, and civil liberties; harmonize and support coordination with other departments and agencies, the private sector, and non-governmental organizations; and support research and development efforts to assess and combat MDM." App'x 134 (emphasis added). Fox and the District Court err by focusing solely on the second paragraph, which merely identified the "lines of effort" related to MDM over which the Board will "develop and support the implementation of governance policies and protocols…." *Id*. Reading all three

paragraphs together is not, as Fox asserts, an attempt to "divert attention" from the Board's role with respect to MDM. (Fox Br. 40) Rather, it is the only reasonable way to understand the Board's function and authority. The charter's "Purpose" section cannot support Fox's statements that Jankowicz had authority to censor, surveil, or threaten anyone. Thus, Jankowicz's claim that such statements are false is more than plausible.

Fox's analysis also ignores the rest of the Board's charter altogether. This includes the charter's clear (and repeated) distinctions between "Components" and the Board, *see, e.g.*, App'x 135–6, its description of Jankowicz's responsibilities as Executive Director, which include no role for engaging directly with MDM, App'x 136, and the charter's last section, which confirms that the Board was a "departmental forum for governance of DHS policies, plans, procedures, standards, and activities pertaining to MDM that threatens homeland security." App'x 137. Nor is there any evidence to support Fox's assertion that the Board's role in coordinating among DHS components who identify MDM would ever entail participating in publicly identifying or labeling speech.

Fox's context-stripped and misleading reading of the charter does not negate its plain text, nor Jankowicz's plausible allegations about her role and the role of the Board. The District Court erred by holding otherwise.

### 2. Fox was not free to ignore all inconvenient clarifications and denials as it claims

Fox claims not only the right to selectively misread the charter in support of its false narrative, but also the right to willfully ignore clarifications and denials they deem inconvenient. Fox is flatly wrong. Not only are there several examples of decisions previously cited that hold the opposite, Fox itself has lost when making this argument in other cases. *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1023–25 (Del. Sup. Ct. 2023); *see also Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657, 691 (1989).

The facts at issue in *Karedes v. Ackerly Grp., Inc.*, 423 F.3d 107 (2d Cir. 2005), are instructive. There, the plaintiff alleged a newspaper defamed him by reporting that a financial audit caused a village in New York to improperly pay invoices. *Karedes*, 423 F.3d at 110. The Second Circuit vacated the district court's grant of the motion to dismiss, holding the plaintiff was "entitled to argue … that any [] ambiguity" in the initial characterization of the audit report "was dispelled when [a] representative [from the auditing firm] expressly disclaimed any finding that the Village actually paid for expenses" it shouldn't have. *Id.* at 118. The Second Circuit also noted that not only did the complaint allege the clarifying disclaimer, but also that the newspaper "witnessed that disclaimer" at a press conference. *Id.*

Here, similarly, Fox ignored clarifications and denials provided in response to questions from <u>its own White House correspondent</u>. App'x 57–58, ¶ 59. It also ignored the clarifications of DHS Secretary Mayorkas on <u>Fox News Sunday</u>. App'x

55, ¶ 54. Not only that, it also ignored a DHS fact sheet, App'x 57, ¶ 59, a New York Times article with multiple sources, App'x 58, ¶ 60, Congressional testimony by Secretary Mayorkas, App'x 59, ¶ 61, Jankowicz's own statements, App'x 65–69, ¶¶ 76–77, 84–85, and the reasonable reading of the charter. That is as much — indeed, more — than the Second Circuit found to be sufficient ignored clarification in *Karedes* or what the Supreme Court noted in the holding of *Harte-Hanks*. *See infra* n.10.

Taking together all the relevant parts of the charter and the constellation of clarifications and denials that Fox ignored, Jankwicz's allegations that Fox's statements "produce[d] a different effect on a reader than would a report containing the precise truth" are more than plausible. *Zerman v. Sullivan & Cromwell*, 677 F. Supp. 1316, 1322 (S.D.N.Y. 1988). If Fox wishes to argue otherwise, it may do so after discovery. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001) ("[T]he falsity … inquir[y] typically requires discovery.").

### 3. Fox's claims that Jankowicz was fired were meaningfully false

Fox claims that the factual difference between being fired and resigning is merely a "quibble" that makes no difference to its listeners and thus cannot plausibly be false. (Fox Br. 43–45). Not only does this defy common sense (as anyone asked about prior experience in a job interview could attest), it ignores allegations in the Complaint, and ignores apposite precedent.

Jankowicz resigned from DHS after the Board was paused. App'x 65, ¶ 77. Fox reported her resignation as a resignation in a written article. App'x 86–87, ¶ 120. And a DHS spokesperson confirmed not just that she had resigned, but that she was doing so having "been subjected to unjustified and vile personal attacks and physical threats." App'x 65–66, ¶ 78. It was on television, where Fox's audience was acclimated to coverage of Jankowicz as a cartoonish villain, that Fox claimed she had been fired. As the Complaint notes, the coverage had its intended effect on Fox's viewers. At least one viewer sent Jankowicz a message saying "You got fired. The entire country dislike you. Bye bye C[***]." App'x 99, ¶ 140.

The effect on the viewer is clear as day. There is a substantive factual difference between resigning and being contemptuously ejected from a government agency. Fox's coverage was intended to — and did — persuade viewers that Jankowicz was "booted" from the government, not that she resigned. Jankowicz plausibly alleged that the statements about her resignation were not just false, but materially false. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 108–09, 113–14 (2d Cir. 2010); *Davis*, 754 F.2d at 84; *Martin v. Finley*, 349 F. Supp. 3d 391, 426–28 (M.D. Pa. 2018), *on reconsideration*, No. 3:15-CV-1620, 2019 WL 1473421 (M.D. Pa. Apr. 3, 2019).

**4. Fox's claims that Jankowicz was associated with Birdwatch were meaningfully false**

Fox also claimed that Jankowicz was directly intertwined with the Birdwatch tool on Twitter, calling it "her fix" to Twitter, claiming that she "pitched" the concept, and that she wanted to personally edit users' posts, App'x 81–84, ¶¶ 114(a)–(g), despite her affirmative contemporaneous statement "I don't have … time to fact-check Twitter." App'x 78, ¶ 108. Even where Fox used direct quotes by Jankowicz related to Birdwatch, it omitted key context to distort the meaning of those statements and conveyed "an attitude the speaker does not hold." *Masson*, 501 U.S. at 511. This type of falsity is sufficient to cause reputational injury. *Id*. Fox's claims to its audience that Jankowicz "pitched" or had ownership over a tool she mentioned in passing falsely characterized her relationship with Birdwatch (she had none), and its claims that Jankowicz "wants to edit your Tweets" when she expressly said she had no time or desire to do so allowed Fox to further falsely paint her as a propagandist villain when discussing her role as Executive Director of the Board.

### C. Jankowicz plausibly alleges Fox's statements were made with actual malice

Fox argues in the alternative that dismissal can be affirmed based on what it considers a failure to plausibly allege actual malice. Fox is wrong. Without belaboring each individual point, "it is not the district court's province to dismiss a plausible complaint" as to actual malice even if "it is not as plausible as the

21

defendant's theory." *Palin*, 940 F.3d at 815.[9] The Opening Brief lays out why several factors plausibly demonstrate actual malice at this stage. (Opening Br. 52–55). Although Fox attempts to pick apart each point individually, the Supreme Court has made clear that allegations of actual malice should be "considered cumulatively." *Harte-Hanks*, 491 U.S. at 690.[10] Where it is plausible that "defendants purposefully avoided the truth," the plaintiff has stated a claim. *Khalil v. Fox Corp.*, 630 F. Supp. 3d 568, 585 (S.D.N.Y. 2022). At this early stage, Jankowicz has satisfied that burden.

### D. Jankowicz plausibly alleges Fox's statements were defamation *per se*

Fox also claims that the Complaint does not adequately allege defamation *per se*.[11] Among other disproven assertions, Fox claims there were no plausible

---

[9] Fox cites to *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501 (D.C. Cir. 1996), but it is distinguishable. *See id.* at 1513 ("[Plaintiff] points to no evidence that would have been available to [the author] before he published [the book] establishing that the story is a fabrication.").

[10] Fox also cites a footnote in *Harte-Hanks* for the proposition that there is no need to accept denials from the subject of a story. (Fox Br. 48). This general principle stated in *dicta* runs counter to the actual holding, in which the Court affirmed the merits judgment that the defendant was liable for defamation stated with actual malice because a quoted source's accusation "had been denied not only by [the plaintiff himself], but also by five other witnesses before the story was published." *Harte-Hanks*, 491 U.S. at 691. Similarly here, Fox's allegations were not simply denied by Jankowicz, but were affirmatively and contemporaneously disproven by multiple sources. The failure to consider and incorporate those denials can give rise to defamation liability.

[11] Fox also devotes space in its brief to whether Jankowicz has adequately alleged special damages as an alternative to defamation *per se*. This is irrelevant, as Jankowicz only asserts a claim for defamation *per se*.

allegations that Jankowicz's professional life was damaged by its maliciously false statements. But it is undisputed that Jankowicz had to resign from government after only about three months, was accused of working to censor, surveil, and otherwise violate the Constitutional rights of Americans, and was harassed, stalked, and doxxed, to the point where she was advised to leave her own home to ensure her safety.

The Complaint also specifically notes that Jankowicz's "business reputation and ability to work with institutions (public and private)" has been negatively impacted by the "baggage of her false reputation" created by Fox even after she resigned. App'x 104, ¶ 150. It is incredulous to suggest that forcing someone to leave public service after three months by falsely accusing them of violating the Constitution and inspiring a campaign of (among other things) death threats based on that false narrative, would not affect their business, trade, or profession. Jankowicz's career has been forever affected by what Fox did. Fox's protestations to the contrary notwithstanding, these allegations are more than sufficient to plausibly allege harm to Jankowicz's "trade, business or profession." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992). Fox is wrong and Jankowicz has plausibly alleged defamation *per se*. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113–14 (2d Cir. 2010).

## E. Jankowicz plausibly alleges a claim against Fox Corporation

Fox argues that the claims separately fail against Fox Corporation. These arguments do not engage with the Complaint, and in any case demand particularized allegations uniquely within Fox's possession that case law does not require. *See Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 716–17 (S.D.N.Y. 2014); *US Dominion, Inc. v. Fox Corp.*, No. N21C–11–082 EMD CCLD 2022 WL 2229781, at *8–9 (Del. Sup. Ct. June 21, 2022).

## III. Fox's waiver arguments fail

Fox's repeated claims that the statements referenced in the Opening Brief were not raised before the District Court are incorrect. For example, Fox claims that categories of statements related to its claims that Jankowicz could and would surveil Americans or presented a physical risk to their safety are "new" categories of statements. (Fox Br. 36–37). In so doing, Fox mischaracterizes the record. Even taken as true, however, these claims do not support a finding that Jankowicz waived any argument presented here.

"[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 432 n.1 (3d Cir. 2011) (Hardiman, J., concurring) (quoting *U.S. v. Olano*, 507 U.S. 725, 733 (1993)). This Court has rejected attempts by appellees to claim as Fox does that raising issues on appeal in

a different perspective than they were raised below constitutes waiver. *See, e.g.*, *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 n.8 (3d Cir. 2016).

In support of its waiver argument, Fox repeatedly cites this Court's unpublished decision *Dreibelbis v. Scholton*, 274 Fed. Appx. 183 (3d Cir. 2008), but *Dreibelbis* involved an appeal predicated in relevant part on challenging a motion for reconsideration. While this Court must conduct a *de novo* review of the motion to dismiss here, a motion for reconsideration ruling is reviewed only for abuse of discretion. Abuse of discretion necessarily requires a court to consider whether and how issues were presented to the district court. *See Confer v. Custom Eng'g Co.*, 952 F.2d 41, 43–44 (3d Cir. 1991). Notably, the *Dreibelbis* court understood this distinction in applying its analysis, as it cited *Confer*. *See Dreibelbis*, 274 Fed. Appx. at 185. Fox's omission of this critical context — and its failure to offer any additional authorities for this proposition — is telling.[12]

There has been no waiver and Fox's arguments are wholly unpersuasive.

---

[12] Fox's other purported authorities for its waiver arguments arise in the context of <u>appellate</u> waiver, which occurs when an issue is not sufficiently developed or raised by the appellant in their opening brief. Fox does not cite any authority suggesting that these principles apply to this Court's *de novo* review of a motion to dismiss.

**IV. Most of the defamatory statements in the Complaint are not time-barred, and the Court can also consider time-barred statements for their relevance to the plausibility of Jankowicz's claims**

Fox also points out that some of the statements referenced in the Complaint are time-barred. (Fox Br. 51). Jankowicz agrees that statements made before May 10, 2022 (one year before filing of the initial complaint) are time-barred under New York's one-year statute of limitations for defamation claims. However, it is important to note that "[c]ourts … have repeatedly explained that although time-barred acts are not themselves actionable, such acts may be used for other purposes, such as to establish motive; provide background; … or put any timely-filed claim in context." *See, e.g.*, *Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1236–37 (D. Or. 2017) (collecting cases), *aff'd*, 758 Fed. Appx. 582 (9th Cir. 2018). The statute of limitations also does not affect many of the statements at issue in this case. There are 33 statements from May 10, 2022 or later alleged in the Complaint to be actionable and defamatory.[13]

---

[13] For the Court's convenience, the following are a full list of the actionable and timely statements in the Complaint. App'x 47, ¶ 38; App'x 63–4, ¶¶ 69–72; App'x 66–7, ¶¶ 80–82; App'x 69, ¶ 86; App'x 72, ¶ 95; App'x 73, ¶¶ 97–8, App'x 74–6, ¶¶ 100–02; App'x 81–5, ¶¶ 114 (a)–(i); App'x 86–8, ¶ 120; ¶¶ 122–24.

## CONCLUSION

For the reasons explained above and in Plaintiff-Appellant's Opening Brief, this Court should vacate the memorandum and order of dismissal and remand for further proceedings.

Dated: March 12, 2025
New York, NY

Respectfully submitted,

By:    /s/ Max Rodriguez

Max Rodriguez
LAW OFFICE OF MAX RODRIGUEZ PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
Tel: (646) 741-5167
max@maxrodriguez.law

Rylee Sommers-Flanigan
Molly E. Danahy
UPPER SEVEN LAW
P.O. Box 31
Helena, MT 59624
(406) 306-0330
rylee@uppersevenlaw.com

*Attorneys for Plaintiff-Appellant
Nina Jankowicz*

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NINA JANKOWICZ;

Plaintiff–Appellant,

v.

FOX NEWS NETWORK, LLC, and FOX
CORPORATION;

Defendants–Appellees.

Case No. 24-2544

## CERTIFICATE OF COMPLIANCE

This document complies with Federal Rule of Appellant Procedure 32(g)(1),

this document contains 6,473 words of proportionally-spaced, 14-point type, and the

word processing system used was Microsoft Word 365.

*/s/ Max Rodriguez*
Max E. Rodriguez
Law Office of Max Rodriguez PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
Tel: (646) 741-5167
max@maxrodriguez.law

*Attorney for Plaintiff-Appellant*
*Nina Jankowicz*

Dated: March 12, 2025

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NINA JANKOWICZ;

    Plaintiff–Appellant,

        v.

FOX NEWS NETWORK, LLC, and FOX
CORPORATION;

    Defendants–Appellees.

Case No. 24-2544

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I certify further that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system.

        */s/ Max Rodriguez*
        Max E. Rodriguez
        Law Office of Max Rodriguez PLLC
        575 5th Avenue, 14th Floor
        New York, NY 10017
        Tel: (646) 741-5167
        max@maxrodriguez.law

        *Attorney for Plaintiff-Appellant*
        *Nina Jankowicz*

        Dated: March 12, 2025

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| NINA JANKOWICZ; | |
| Plaintiff–Appellant, | |
| v. | Case No. 24-2544 |
| FOX NEWS NETWORK, LLC, and FOX CORPORATION; | |
| Defendants–Appellees. | |

## **CERTIFICATION OF BAR MEMBERSHIP**

I, Max Rodriguez, hereby certify that I am duly admitted to practice law before the United States Court of Appeals for the Third Circuit.

/s/ Max Rodriguez
Max E. Rodriguez
Law Office of Max Rodriguez PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
Tel: (646) 741-5167
max@maxrodriguez.law

*Attorney for Plaintiff-Appellant*
*Nina Jankowicz*

Dated: March 12, 2025

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NINA JANKOWICZ;

    Plaintiff–Appellant,

        v.

FOX NEWS NETWORK, LLC, and FOX
CORPORATION;

    Defendants–Appellees.

Case No. 24-2544

## CERTIFICATION OF IDENTITY STATEMENT

I, Max Rodriguez, hereby certify that I will cause paper copies of Plaintiff-Appellant Nina Jankowicz's reply brief to be printed and sent via Federal Express in compliance with the Court's rules, with all copies identical to one another and the electronic PDF version filed by CM/ECF on March 12, 2025.

*/s/ Max Rodriguez*
Max E. Rodriguez
Law Office of Max Rodriguez PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
Tel: (646) 741-5167
max@maxrodriguez.law

*Attorney for Plaintiff-Appellant*
*Nina Jankowicz*

Dated: March 12, 2025

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NINA JANKOWICZ;

      Plaintiff–Appellant,

          v.

FOX NEWS NETWORK, LLC, and FOX
CORPORATION;

      Defendants–Appellees.

Case No. 24-2544

## CERTIFICATION OF VIRUS SCAN

I, Max Rodriguez, hereby certify that a virus check was performed on Plaintiff-Appellant Nina Jankowicz's reply brief, and all files are free from viruses. The check was performed with McAfee Total Protection for Mac.

/s/ Max Rodriguez
Max E. Rodriguez
Law Office of Max Rodriguez PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
Tel: (646) 741-5167
max@maxrodriguez.law

*Attorney for Plaintiff-Appellant*
*Nina Jankowicz*

Dated: March 12, 2025